



*Federal Plaza, 37th Floor*
*New York, New York 10278*

April 2, 2025

**By ECF**

The Honorable Laura Taylor Swain
Chief United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Emir Antonio Ruiz Chavez*, S2 21 Cr. 187 (LTS)

Dear Judge Swain:

      The Government respectfully submits this letter in advance of sentencing for defendant Emir Antonio Ruiz Chavez, which is currently scheduled for April 9, 2025, at 11:00 a.m. For the reasons set forth below, the Government respectfully requests that the Court sentence the defendant consistent with the parties' agreed-upon Guidelines range of 70 to 87 months, and impose a sentence within that range.

**I.    RELEVANT BACKGROUND**

      Between February 2020 and March 2021, Ruiz Chavez participated in a conspiracy to import 57 kilograms of cocaine into the United States from Colombia. (PSR ¶¶ 12-18.) Ruiz Chavez and his codefendants, Jorge Diego Quijano Lopez and Marco Fidel Cardona Cardona arranged with an individual ("Individual-1") to transport the cocaine to Florida in a second individual's ("Individual-2") plane and that the cocaine would then be driven to New York City and sold. (PSR ¶¶ 12-15.) Individual-2 agreed with the three defendants that he would fly the cocaine proceeds back to Colombia in exchange for 10 percent of the proceeds. (PSR ¶ 15.) On December 9, 2020, Ruiz Chavez, Quijano Lopez, and another individual delivered the 57 kilograms to Individual-2 so that Individual-2 could fly them to the United States. (PSR ¶ 16.) the cocaine was taken into the custody of the Colombian National Police ("CNP") after it was provided to Individual-2. (*Id.*) A field test was positive for cocaine. (*Id.*)

      After delivering the cocaine to Individual-2, Ruiz Chavez and his codefendants believed that it had been flown to the United States and sold in New York City and began contacting Individual-1 about the proceeds of the sale.[1] (PSR ¶ 18.) Suspecting Individual-1 had robbed

---

[1] Because the cocaine had been seized by the CNP and was never actually sold, there were in fact no proceeds.

them, Cardona Cardona arranged for Natanael Pellot to travel to New York City to attempt to collect the proceeds from Individual-1. (*Id.*)

In terms of relative culpability, Ruiz Chavez, Quijano Lopez, and Cardona Cardona all played roughly equally culpable roles in arranging the cocaine transaction and delivering the cocaine to Individual-2. However, based on the coconspirators anticipated division of the profits from the cocaine, Ruiz Chavez appears to be more senior in the organization. Based on a recorded call between Quijano Lopez and Individual-1, the profits from 45 kilograms would go to the head of the drug trafficking organization who supplied the cocaine, the profits from eight kilograms would go to Ruiz Chavez, and the profits from the remaining four kilograms would be split among the others. During this conversation, Quijano Lopez and Individual-1 were assuming a price of $38,000 per kilogram, which was approximately the market price for cocaine in New York City at that time. Had Ruiz Chavez actually received his share of the proceeds, he would have made $304,000 on the sale of the imported cocaine.

## II. DISCUSSION

### A. Applicable Law

As the Court is aware, the Guidelines continue to provide important guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). A "district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," and that range "should be the starting point and the initial benchmark" for the Court's sentencing determination. *Gall v. United States*, 552 U.S. 38, 49 (2007). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *id.* at 46, they are not merely a "body of casual advice." *Cavera*, 550 F.3d at 189 (internal quotation marks omitted).

Following the calculation of the applicable Guidelines range, a court then considers the seven factors outlined in 18 U.S.C. § 3553(a), which include the nature and circumstances of the offense, the individual characteristics of the defendant, and the need to adequately deter criminal conduct and promote respect for the law. *Gall*, 552 U.S. at 50 & n.6. In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). The Guidelines' relevance throughout the sentencing process stems in part from the fact that, while they are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives." *Rita v. United States*, 551 U.S. 338, 348 (2007). To the extent a court imposes a sentence outside the range recommended by the Guidelines, that court must "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Cavera*, 550 F.3d at 189 (quoting *Gall*, 552 U.S. at 46).

### B. A Sentence Within the Agreed-Upon Guidelines Range of 70 to 87 Months' Imprisonment Is Warranted

First, a substantial sentence is necessary to reflect the seriousness of Ruiz Chavez's criminal conduct and to afford adequate deterrence both to this individual defendant and to others tempted to engage in similar conduct. Ruiz Chavez and his coconspirators conspired to import 57 kilograms of an incredibly dangerous drug into the United States, intending for it to be sold on the streets of New York City. 57 kilograms of cocaine is enough for an enormous number of customers. Cocaine is a highly addictive substance that destroys lives, destabilizes communities, and funds criminal organizations. Cocaine use leads to, among other things, paranoia, psychosis, stroke, seizures, respiratory failure, organ damage, and, at times, even death.[2] Cocaine harms not just its users, but also their family and friends and the broader communities to which they belong.[3]

The harms posed by cocaine have only increased over time. Empirical data shows, for example, that while fentanyl poisonings are clearly the top killer among controlled substances, the total number of deaths from drug poisonings involving cocaine have also increased dramatically over the last two decades:

---

[2] *See* National Institute on Drug Abuse, What Are the Long-Term Effects of Cocaine Use? (May 2016), *available at* https://www.drugabuse.gov/publications/research-reports/cocaine/what-are-long-term-effects-cocaine-use.

[3] *See, e.g.*, *United States v. Colon*, No. 10 Cr. 197 (CM), 2020 WL 4496761, at *2 (S.D.N.Y. Aug. 4, 2020) (describing cocaine as "a highly addictive drug that destroys lives, families, and communities"); *United States v. Qayyem*, No. 10 Cr. 19 (KMW), 2012 WL 92287, at *4 (S.D.N.Y. Jan. 11, 2012) (describing study in preeminent medical journal in which cocaine was found to have "second-highest mean harm score of all twenty drugs [under study], after heroin").



DEA, 2020 National Drug Threat Assessment (Mar. 2021), at 30.[4]

The severity of Ruiz Chavez's conduct is exacerbated by the fact that he sought to import that dangerous and addictive drug into the United States from Colombia—not only a blatant violation of United States law, but an activity that is facilitated by dangerous criminal networks operating outside the United States. In 2022, approximately 97% of cocaine seized in or in transit to the United States originated from Colombian coca.[5] Much of that Colombian coca is grown, processed into powder cocaine, and transported to the United States by transnational criminal organizations that engage in widespread violence to facilitate and protect their drug trafficking activities and launder the proceeds back to Colombia. To be clear, there is no indication that Ruiz Chavez himself is a member of a drug cartel. But he participated in an illicit marketplace driven by and benefiting violent criminal organizations that destroy communities and lives wherever they operate. The transnational illicit drug trade is not only devastating in communities where drugs are consumed, like New York City; it is similarly devastating to communities where drugs are grown and manufactured and strongholds in which drug cartels operate—where people have to contend with the violence and lack of rule of law caused by these transnational criminal organizations on a daily basis. That conduct is incredibly serious and must be met with an equally serious sentence.

A sentence within the Guidelines Range is also necessary to ensure deterrence—both of the defendant himself and of others who wish to engage in the same behavior. Deterring such conduct requires an unambiguous message that the importation of dangerous narcotics will be met with significant consequences.

---

[4] Available at https://www.dea.gov/sites/default/files/2021-02/DIR-008-21%202020%20National%20Drug%20Threat%20Assessment_WEB.pdf.

[5] *See Cocaine Signature Program Report, CY 2022*, Drug Enforcement Administration, *available at* https://www.dea.gov/sites/default/files/2024-09/CY%202022%20Cocaine%20Signature%20Program%20Report%20PRB-2023-21.pdf

A.  **Conclusion**

For the reasons set forth above, the Government respectfully submits that a sentence within the 70-to-87-month range would be sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing.

        Respectfully submitted,

        MATTHEW PODOLSKY
        Acting United States Attorney
        Southern District of New York

By: */s/*  _____
        Elizabeth A. Espinosa
        Assistant United States Attorneys
        Tel.: (212) 637-2216

cc:    Counsel of Record (via ECF)